813 F.2d 403
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SOUTHERN BANK AND TRUST COMPANY, Appellee,
v.
Daniel RHOADES and Norma Rhoades, Appellants, A
ACLI Government Securities, Inc., Defendant.
 No. 85-1301.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 5, 1985.
Decided Sept. 29, 1986.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. G. Ross Anderson, Jr., District Judge. (C/A 84-1423)
 Robert P. Lusk (Karl L. Kenyon; Kenyon & Lusk, on brief), for appellants.
 O.G. Calhoun (Robert C. Wilson, Jr.; Haynsworth, Perry, Bryant, Marion & Johnstone, on brief), for appellee.
 Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal in a diversity action for a declaratory judgment as to the rights and priorities of various parties with regard to two bearer bonds in the amount of $100,000 each. The district court ordered: (1) that Southern Bank & Trust Co. (Southern Bank) sell the bonds in accordance with S.C.CODE Sec. 36-9-504(3); (2) that Southern Bank apply the proceeds to the satisfaction of a judgment in favor of Southern Bank against Braxton, Ltd. (Braxton), whose debt was secured by the bonds; and (3) that Southern Bank pay the remaining balance, if any, to ACLI Government Securities, Inc. (ACLI), in satisfaction of a judgment in favor of ACLI against Daniel Rhoades. Daniel and Norma Rhoades appeal from this order. We affirm in part, vacate in part, and remand.
 
 
 2
 Daniel and Norma Rhoades are brother and sister. Daniel Rhoades conducts business through various corporate entities in both New York and South Carolina. One of the corporations with which Daniel Rhoades is associated is Braxton, Ltd., of which he is secretary. In 1977, Daniel Rhoades purchased the bonds in question through Southern Bank with funds he now alleges were supplied from Norma Rhoades' account at Southern Bank. Daniel Rhoades then pledged the bonds, there were three of them, to Southern Bank as collateral for a loan to purchase a home in Greenville, South Carolina. Southern Bank issued a custody receipt to Daniel Rhoades for his pledge of the bonds on the home mortgage. This loan was subsequently satisfied, whereupon Southern Bank returned to Daniel Rhoades one of the three pledged bonds. Daniel Rhoades then pledged the remaining two bonds to Southern Bank as part of the collateral on a loan to Braxton, of which, as was previously noted, Daniel Rhoades was secretary.
 
 
 3
 Braxton subsequently defaulted on this loan. Southern Bank brought action on the defaulted note, and trial of the foreclosure action resulted in a judgment against Braxton in the amount of $328,408.57, plus interest and attorney's fees. Of this amount, $140,000 remained due after the valuation for foreclosure purposes of all the collateral securing the Braxton loan other than the bonds in question. Daniel Rhoades, Norma Rhoades, and ACLI then made claim to the bonds in question. Daniel and Norma Rhoades alleged that the bonds belonged to Norma Rhoades and that they were improperly pledged to Southern Bank as collateral for the Braxton loan. Thus, they requested that the bonds be returned to Norma Rhoades. ACLI alleged that the bonds belonged to Daniel Rhoades, and laid claim to the bonds as one of Daniel Rhoades' judgment creditors. Southern Bank then instituted the present action to determine the rights and priorities of the parties to the two bearer bonds. The district court found that Southern Bank's interest in the bonds took priority over both ACLI and Daniel Rhoades, and ordered Southern Bank to sell the bonds, apply the proceeds to Braxton's debt to Southern Bank, and pay over the remainder, if any, to ACLI.
 
 
 4
 On appeal, the Rhoades contend, among other things, that the district court erred in holding that Southern Bank could obtain an interest in the bonds through a pledge of the bonds by someone other than the bonds' actual owner. The Rhoades also contend that even if Southern Bank could obtain an interest in the bonds through Daniel Rhoades' pledge of the bonds in question, Southern Bank did not acquire such an interest because it had notice of an adverse claim, which, according to South Carolina law, precluded Southern Bank's interest from attaching. We are of opinion that neither contention has merit.
 
 
 5
 With regard to the Rhoades' first contention, under South Carolina law a bona fide purchaser, in addition to acquiring the rights that his transferor had or had actual authority to convey, also acquires the security transferred free of any adverse claim. See S.C.CODE ANN. Sec. 36-8-301(1) & (2) (1976). Thus, contrary to the Rhoades' claim, if Southern Bank was a bona fide purchaser within the South Carolina definition of that term, then Southern Bank could acquire rights in the bonds superior to those that Daniel Rhoades enjoyed.
 
 
 6
 Section 36-8-302 of the South Carolina Code defines bona fide purchaser of a security as "a purchaser for value in good faith and without notice of any adverse claim who takes delivery of a security in bearer form." S.C.CODE ANN. Sec. 36-8-302 (1976). The Rhoades contend that Southern Bank is not a bona fide purchaser because it knew that the bonds belonged to Norma Rhoades, and not to Daniel Rhoades, and therefore had notice of an adverse claim to the bonds. Section 36-8-304 of the South Carolina Code deals with notice of adverse claims for purposes of the bona fide purchaser definition. S.C.CODE ANN. Sec. 36-8-304 (1976). This section lists three specific situations in which a purchaser is charged with notice of adverse claims as a matter of law. As the official comments to that provision make clear, the listing is not exhaustive and does not exclude other situations in which the trier of facts may determine that the purchaser was on notice. This case does not fall within one of the three specific situations described in Sec. 36-8-304. Consequently, we must determine whether the district court's implicit determination that Southern Bank did not have notice as a matter of fact was erroneous. We conclude that it was not.
 
 
 7
 Southern Bank purchased the bonds at the instance of Daniel Rhoades. Daniel Rhoades then pledged the bonds on a loan to Capital Aid Corporation, Daniel Rhoades' personal holding company, for the Rhoades' personal home in Greenville. Daniel Rhoades then pledged the bonds as collateral on a loan to a corporation of which he was secretary. Thus, Southern Bank's entire course of dealing with regard to the bonds was with Daniel, not Norma, Rhoades. Prior to Braxton's default on its loan from Southern Bank, there was never any question raised as to whether Daniel or Norma Rhoades owned the bonds in question, or whether, if Norma did in fact own them, Daniel, as Norma's brother, had authority to pledge them. Under these circumstances, we do not believe that the district court committed reversible error by concluding that Southern Bank was not on notice as to an adverse claim to the bonds from Norma Rhoades.
 
 
 8
 The Rhoades contend that Southern Bank knew or should have known that the bonds belonged to Norma Rhoades because the bonds were purchased with funds from Norma Rhoades' account at Southern Bank. This argument is without merit, however, for even if Southern Bank had been aware that Norma Rhoades did, in fact, own the bonds in question, this fact alone, without more, would not constitute notice of an adverse claim, nor would it create a duty of inquiry into the rightfulness of Daniel Rhoades' pledge of the bonds as collateral for the Braxton loan. See S.C.CODE ANN. Sec. 36-8-304(2) (1976).
 
 
 9
 In their appeal, the Rhoades also question the propriety of the district court's ruling that ACLI, as a judgment creditor of Braxton, was a bona fide purchaser of the bonds, entitled to the proceeds remaining from the sale of the bonds in question, if any, after the satisfaction of the Braxton judgment to Southern Bank. This point is well taken. Although ACLI took without any notice of adverse claims against the bonds, ACLI was not a "purchaser" under S.C.CODE Sec. 36-8-302 because ACLI's acquisition of an interest in the bonds was not through a voluntary transaction, but rather through a levy on a judgment debt. See S.C.CODE Sec. 36-1-201(32) & (33) (defining "purchaser" as one who takes an interest in property through a voluntary transaction); see also Mazer v. Williams Bros. Co., 461 Pa. 587, 337 A.2d 559 (1975) (holding that a judgment creditor is not a bona fide purchaser because bona fide purchaser status under statute defining bona fide purchaser of securities requires that purchaser take delivery of security, with "delivery" meaning voluntary transfer of possession). Because ACLI was not a purchaser of the bonds, it could not be a bona fide purchaser, and the district court erred in concluding otherwise. Consequently, we vacate that portion of the district court's order awarding ACLI, as a bona fide purchaser of the bonds, the surplus remaining from the sale of the bonds after the satisfaction of Southern Bank's judgment.
 
 
 10
 This is not to say that ACLI may not be entitled to the surplus. It may well be. We hold only that ACLI is not entitled to the surplus as a bona fide purchaser of the bonds.
 
 
 11
 The judgment of the district court as to Southern Bank's right to the proceeds is affirmed.
 
 
 12
 The judgment of the district court as to ACLI's right to the proceeds as a bona fide purchaser is vacated.
 
 
 13
 The case is remanded to the district court for appropriate action not inconsistent with this opinion.
 
 
 14
 AFFIRMED IN PART VACATED IN PART and REMANDED.